UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>   v.<br><br>**KEITH JONES,**<br><br>   **Defendant.** | Case No. 23-MJ-290 |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that Defendant Keith Jones be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving a firearm) of the federal bail statute. On January 15, 2018, Keith Jones and an associate robbed a CVS pharmacy in Price George's County Maryland of multiple bottles of Promethazine and $584.00.  He attempted to steal Percocet, too, but was denied when the pharmacist was unable to get into a safe where they were stored.  While fleeing from his robbery, he and his associate led police officers on a chase from Maryland into Washington D.C., where Jones was able to bail out of the vehicle and make his escape.   It then took over a year to arrest and charge Jones.  Jones plead guilty to the charge of Robbery, a crime of violence, on January 3, 2020 in the Circuit Court for Prince George's County.  He received a sentence where he served only six days in jail, followed by three years of supervised probation.

Ever since Jones' conviction in 2020, he has continued to commit drug offenses, including the trafficking of Fentanyl and other narcotics in and around Washington D.C.  Much of Jones' drug trafficking, as shown by various cellular extractions of his associates and is discussed below

in this memorandum, has been committed while he was on supervised probation. It is therefore a mere coincidence that Jones is now before the Court on a charge of gun possession from events that took place on October 28, 2023. In this case, Jones and an associate were spotted in the lobby of the Capitol Park Plaza Apartments by Special Police Officers who believed Jones to be barred from the location. Jones, again, began to flee from officers. And in the process, he attempted to throw a loaded Smith & Wesson 40 caliber pistol underneath a chair when it discharged and shattered a glass window in the lobby of the building. Despite the numerous individuals chasing Jones, no one was hit with Jones' bullet. The entire incident is captured on surveillance footage and is provided to the Court as an exhibit.

While his firearm possession alone is sufficient for this Court to order Jones detained pending trial, his firearm possession combined with the evidence of his drug trafficking make it clear that there are no condition or combination of conditions that will reasonably assure his future appearance in this Court and the safety of the community.

## BACKGROUND AND INSTANT OFFENSE

### *Jones' Status as a Drug Trafficker*

Keith Jones is associated with multiple defendants that are currently charged in this Court with a host of drug-related and firearm-related offenses. During the investigation, the government has recovered numerous firearms (some of which are equipped with functioning machinegun conversion devices), blue pills stamped with "M" and "30," (all of them confirmed to be Fentanyl) and various other drugs including crack-cocaine and marijuana.

Through multiple investigative means, the government has been able to identify text message chains between these defendants and Jones from as early as fall of 2021 to the date of their incarceration. These text messages show these defendants go to Jones as a source of large

amounts of narcotics and other drugs, which are then distributed widely into Washington D.C. For example, in the fall of 2021 (a time when Jones still had a year and a half of supervised probation remaining), Defendant-1 texted Jones to buy over $10,000 in pills. During that same time period, individuals are seen texting Defendant-1 asking to speak to Jones so they can purchase Percocet. Defendant-1 has been arrested and linked to over 1,000 blue "M-30" pills from 2021 to 2022, all of which have been tested and confirmed to be Fentanyl. During each of Defendant-1's arrests, he was also linked to firearms that were possessed in furtherance of Defendant-1's drug trafficking operations. Defendant-1's text messages show that he then distributes the pills in smaller quantities to other associates, such as Defendant-2. Defendant-2 also goes to Jones as a source of large amounts of drugs, which are then distributed in smaller quantities to members of the community. Defendant-2 is seen in numerous text messages purchasing M-30 Fentanyl pills and marijuana from Jones. And like the text messages linked with Defendant-1, individuals are seen texting Defendant-2 to purchase drugs, like Percocet, from Jones. In a text message from the summer of 2022 that is representative of Jones' status as a drug distributor, Defendant-2 thanks Jones for turning him into a drug dealer. Defendant-2 was arrested earlier this year with "M-30" Fentanyl pills and a firearm as well. The investigation into these defendants show a consistency – that they, and others, all go to Jones as a source of drugs.

### *Jones' Criminal History*

On January 3, 2020, Jones was convicted of robbing a pharmacy for drugs. In that case, Jones and an associate went to a CVS in Seat Pleasant, Prince George's County, Maryland on January 15, 2018. Jones and his associate went into the pharmacy behind the counter, and Jones himself demanded from the pharmacist "lean" (the street name for a drink combining a soft drink with Promethazine) and "Percocet." Fearing for her safety, the pharmacist led Jones to where the

Promethazine was stored. As Jones was filling his bag with Promethazine bottles, his associate implied that he was armed with a firearm and began stealing money from the cash registers. Jones, finished with taking the Promethazine he needed, turned again to the pharmacist and demanded Percocet. When the pharmacist couldn't get into a safe where the Percocet was stored, Jones and his associate fled out of the store in a getaway vehicle. When officers from the Prince George's County Police Department attempted to stop Jones' vehicle, he fled, leading officers in a chase from Maryland into Washington D.C. Jones and his associate bailed out of the vehicle once in D.C., and Jones was able to make his escape. Jones was subsequently identified by surveillance video from the CVS, and over a year later around April of 2019, he was arrested and charged with a thirteen-count indictment in Prince George's County case number CT190746X. On January 3, 2020, Jones plead guilty in the Circuit Court for Prince George's County, Maryland to Robbery (Count 4) where he admitted to robbing the CVS pharmacy of promethazine. Jones was sentenced to a period of ten (10) years, execution of sentence suspended as to all but six (6) days followed by three years (3) of supervised probation. Jones' probation expired on January 3, 2023.

Jones was also arrested, but never prosecuted, on November 11, 2022 for firearms and narcotics charges after officers with the Metropolitan Police Department entered a residence at 725 13th Street Southeast in Washington D.C. Members of the Violent Crime Suppression Division and Narcotics Enforcement Unit responded to the 13th Street address in relation to information from D.C. Housing Authority reporting that gang members had "taken over" an apartment and had been using that apartment to distribute narcotics from the location. Law enforcement spoke with the leaseholder and obtained oral consent to enter the apartment days prior to November 11, 2022. On the morning of the arrest, law enforcement once again conversed with the lease holder and obtained oral consent to enter the apartment.

Law enforcement then approached the apartment and knocked on the door. An unknown male individual opened the door only to immediately shut it when noticing the presence of law enforcement. Members of law enforcement stationed outside of the apartment then observed an unknown individual jump out of the window and escape.

Upon entry into the apartment, law enforcement located Jones in what police paperwork described a "Bedroom #2" with four other individuals. Two individuals were located within a different bedroom in what police paperwork described as "Bedroom #1," and one individual was located in the kitchen. No individuals were located in a third bedroom, described as "Bedroom #3."

Within Bedroom #2 where Jones was located, law enforcement recovered various suspected drugs, including:

- A pill bottle containing 78 blue pills marked with "M" and "30"
- A pill bottle containing 20 yellow round pills stamped with "23;"
- A plastic bag containing 222 grams of a green leafy substance, which field tested positive for marijuana; and
- A plastic bag containing twenty-four (24) rounds of .45 caliber ammunition

Throughout the rest of the residence, the following items were recovered, including four firearms:

- A plastic bag containing nine (9) rounds of .40 caliber ammunition (living room);
- Five (5) high capacity magazines capable of holding more than ten rounds and two (2) rounds of 9 millimeter ammunition (kitchen);
- A plastic bag containing 50 grams of white rock like substance, which field tested positive for cocaine base (Bedroom #3);
- A Glock 21 .45 caliber semi-automatic pistol with a high capacity magazine capable of holding more than ten rounds with one round in the chamber and seven (7) rounds in the magazine (Serial KYU227) (outside of Bedroom #3);
- A Glock 30 .45 caliber semi-automatic pistol with a suspected "switch" with a high capacity magazine capable of holding more than ten rounds, with one round in the chamber and seventeen (17) rounds in the magazine (Serial obliterated) (Outside of Bedroom #3);
- A Glock 19 9 millimeter semi-automatic pistol with a high capacity magazine capable of holding more than ten rounds (Serial BUD675) (outside of Bedroom #3); and
- A Glock 17 9 millimeter semi-automatic pistol with a high capacity magazine capable of

holding more than ten rounds with one round in the chamber and seventeen (17) rounds in the magazine (Serial BUAF007) (outside of Bedroom #3)

The case was subsequently no-papered by the United States Attorney's Office, and Jones was released.

### *The Instant Offense*

On Saturday, October 28, 2023, at approximately 10:22 p.m. (EST), Special Police Officers with PChange Protective Services ("SPOs") were parked outside of the Capitol Park Plaza Apartments located at 201 I Street Southwest in Washington D.C. The Capitol Park Plaza Apartments are a large multi-story apartment building with a clear-glass lobby on the first floor. Law enforcement subsequently recovered exterior and interior surveillance footage from Capitol Park Plaza Apartments. Interior footage capturing Jones' gun possession has been submitted to the Court and defense under separate cover. *See* Ex. 1. This footage shows Jones walking with Individual-1 out of an elevator onto the lobby floor at around 10:22 p.m., as seen in the red circle below.



Jones and Individual-1 are then seen on surveillance walking towards the exit of the building until both turn around and begin walking down a different hallway. Ex. 1 at :05- :08.



According to the police report, SPOs were able to observe two individuals, one of them later identified to be Jones, in the lobby of the apartment building and believed at the time that Jones was barred from the property. Jones and Individual-1 are then seen on surveillance video taking flight, with SPOs both on the outside and the inside of the building following. Jones attempts to open a door at the end of the hallway and is unable to do so, at which point he and Individual-1 turnaround back towards the lobby.



Jones and Individual-1 then re-enter the lobby, where Individual-1 runs straight forward while Jones runs to the left (pictured on the right side of the surveillance footage). *Id.* at :30 - :34. Jones then appears to produce a firearm with his left hand and attempts to throw it underneath an armchair. *Id.* at :34 - :36. Surveillance footage shows a muzzle flash consistent with a firearm being discharged, and pursuing security guards react as if a round has been fired. *Id.* Jones is the only person in proximity to the pistol at the time it is discharged. The muzzle flash is circled in red, below.



The round struck a glass window of the leasing office and shattered the glass, as seen below.



The firearm is then seen sliding over to the window on the right side of the lobby (pictured on the left side of the surveillance video), *id.* at :37 - :40, where it was ultimately recovered by the Department of Forensic Sciences once they arrived on scene.

After Jones discards the firearm, Individual-1 is then seen on surveillance falling to the ground when the round is discharged and raising his hands to surrender. Meanwhile, Jones is seen running out of the apartment building towards 234 I Street Southwest, with numerous SPOs in pursuit behind him.



The SPOs continued to chase the Defendant to around 234 I Street Southwest, Washington D.C., which is across the street from the Capitol Park Plaza Apartments. SPOs were able to detain Jones as he attempted to squeeze through a metal gate around 234 I Street Southwest. Of note, SPOs were forced to deploy pepper spray in order to detain him. The incident is captured on body worn camera.

Approximately four minutes later, surveillance footage shows SPOs bringing the Defendant back to the front of the Capitol Park Plaza Apartments (as seen in the red circle below), where he was detained until Metropolitan Police Department Officers arrived and placed him under arrest. Jones is seen on both SPO and MPD body worn camera in his distinctive black floral hooded sweatshirt that he was wearing when he discarded his firearm.



Officers and the Department of Forensic Sciences subsequently recovered one shell casing in the lobby of the apartment, and multiple bullet fragments from within the leasing office. The firearm tossed by the Defendant was also recovered in the lobby of the apartment, which was a black Smith & Wesson M&P 40 caliber pistol with serial number DVD4159.  The firearm was equipped with a thirteen (13) round capacity magazine, loaded with nine (9) 40 caliber rounds in the magazine and one (1) 40 caliber round in the chamber.



In a picture taken by the Department of Forensic Sciences, the firearm is seen where Jones discarded it and is circled in red, below.



On October 29, 2023, Jones was charged with one count of Unlawful Possession of a Firearm (Prior Conviction) in D.C. Superior Court case number 2023 CF2 7925.  On November 1, 2023, Jones was charged in the United States District Court for the District of Columbia by Complaint with one count of Possession of a Firearm and Ammunition by a Person Convicted of an Offense Punishable by a Term of Imprisonment Exceeding One Year, in violation of 18 U.S.C. § 922(g).  At his initial appearance on November 2, the government made this pending motion for his detention pursuant to 18 U.S.C. § 3142(f)(1)(E) of the federal bail statute.  That same day, the Superior Court matter was dismissed.

**ARGUMENT**

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). In determining whether any condition or combinations of conditions will assure the safety of the community, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

A review of the 3142(g) factors makes clear that no condition or combinations of conditions will assure the safety of the community if Jones, nor his continued appearance in any future proceedings, were he to be released.

**I.      The Nature and Circumstances of this Offense Merits Detention.**

The first factor to be considered, the nature and circumstances of the offenses charged, weighs in favor of detention.

Jones is charged with a serious offense carrying significant penalties. For violating 18 U.S.C. § 922(g), he faces a maximum sentence of up to ten years' imprisonment, and his exposure is increased due to his prior conviction of a crime of violence. *See, e.g. United States v. Crews,* 2021 WL 5798033, at *21 (Dec. 7, 2021 D.D.C. 2021) ("the Court concludes that Maryland robbery is a crime of violence under the residual clause."). While the he is charged with a possessory offense, this Court has warned against discounting the inherent danger associated with loaded firearms. *See United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *7-8 (D.D.C. Feb. 6, 2023), *aff'd,* No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023) (the absence of evidence of "use" "does little to detract from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended magazine, . . . more ammunition than the gun was originally manufactured to carry, thereby increasing its potential to do greater harm" and placement "at the ready, on his person, and easily within reach"). Not only was this firearm loaded, *see United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020), *aff'd* (Nov. 5, 2020) (finding that a defendant should be detained pretrial in part because "the firearm recovered from the Defendant's person had a round already chambered, making the circumstances even more troubling,"), Jones' firearm was actually discharged during his attempts to discard it, with two security guards mere feet away from him and four or more SPOs close by. A review of the surveillance footage shows that it is, plainly put, pure luck that Jones himself and any innocent bystander was not harmed by the shot fired. The callous and reckless manner in which Jones handled this firearm is particularly concerning. His flight and his decision to rid himself of his

firearm put numerous individuals, including himself, in close proximity to gunshot. As such, the nature and circumstances of this offense weighs heavily in favor of detention.

## II.     The Weight of the Evidence Against the Defendant is Formidable.

The second factor to be considered, the weight of the evidence, weighs in favor of detention.[1] The government's case against Jones is very strong.

Jones is seen on surveillance video, from multiple different angles, inside of the lobby of the apartment building wearing a distinctive floral hooded sweatshirt. He is observed on one of the internal cameras quite literally possessing the firearm, with no others nearby besides for pursuing security guards, as it is discharged and tossed across the room. The firearm then stays in the same location until the Department of Forensic Sciences recovers it upon their arrival. This is overwhelming evidence that Jones possessed the firearm in question on October 28, 2023 and leaves out the numerous corroborating eyewitness observations of the security guards and SPOs that pursued Jones during his flight. When Jones is detained by SPOs and arrested by MPD, he is on body worn camera wearing the same floral hooded sweatshirt that he is seen tossing the firearm in. The Government anticipates forensic DNA testing of the firearm will only further strengthen its case.

---

[1]     While some judges in this Court have indicated that this factor should be given less weight, in *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case— to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

And Jones' history of being around firearms, as seen in his November 2022 arrest, as well as his flight and choice to throw away his firearm, makes clear that his possession was knowing and intentional. "[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10.

### III. The Defendant's History and Characteristics Merit Detention.

The third factor, Jones' history and characteristics, likewise favor in detention. Jones, unfortunately, has shown that he is not only a danger to the community should he be released, but also a significant flight risk.

As discussed previously in this memorandum, the government has been investigating the drug distribution activities by Jones and his associates, leading to the discovery of over a thousand Fentanyl pills and other narcotics, and numerous firearms (including those modified into machineguns). Evidence from phone extractions show this is but a small portion of the amount of Fentanyl Jones and his associates brought into the District of Columbia.

As stated previously, the government's evidence of Jones' drug trafficking activity is neither speculative nor weak. When each of his associates have been arrested in possession of these Fentanyl pills and firearms, their cell phones have shown the source of the pills (or at least some of them) coming from Jones. The conduct, with respect to just Jones' drug trafficking, has occurred for years undeterred despite being on supervised probation for a prior crime of violence where he and an associate stole narcotics.

And while on supervised probation, Jones has shown that he cannot stop associating with guns and drugs. As seen in the November 2022 arrest, Jones was arrested in a room with four other individuals where 78 blue M-30 pills were recovered (identical in appearance to those that have been recovered and tested to be Fentanyl), 20 more yellow round pills stamped with "23," 222 grams of a green leafy substance that tested positive for marijuana, and twenty-four rounds of .45 caliber ammunition. This, of course, leaves out the 50 grams of suspected cocaine base found in a separate bedroom. Even more concerning are the four firearms found in the apartment in front of a different bedroom, two of which were .45 caliber pistols that can therefore fire the .45 caliber ammunition found in the room where Jones was. As the D.C. Circuit has recognized, "[t]he purchase and sale of narcotics is an inherently dangerous activity, particularly when accompanied by a firearm." *U.S. v. Carter*, 802 F. Supp 2d 180, 184 (D.C. Cir. 2011).

Jones also presents a high risk of flight. First, it is a possibility that Jones is first becoming aware of the government's investigation into his drug trafficking operations through this Court filing. His incentive to flee from any further prosecution is high here. He has also demonstrated that he will go to far lengths to flee from law enforcement. After he robbed the CVS in 2018, he and his associate led officers on a chase from Maryland into Washington D.C. Jones, in that case, was successful is his attempts to escape. Maryland officials were only able to arrest Jones after identifying him using surveillance footage and knowledge that the same individuals had previously robbed multiple pharmacies within the same area. Likewise, in the case before this Court, while Jones' associate surrendered as soon as shots were fired, Jones continued his flight across the street and attempted to squeeze through a metal grate. SPOs were only able to gain his compliance by deploying pepper spray.

As such, this factor weighs in favor of pretrial detention.

### IV.     Jones Presents a Danger to Our Community.

The fourth and final factor, danger to any person or the community posed by Jones' release, similarly weighs in favor of detention.

"At the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33. Jones' possession of the firearm alone presents a danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). This is especially highlighted in the surveillance footage at Exhibit 1, which shows multiple individuals near Jones as his firearm was discharged.

Furthermore, the types of drugs that Jones distributes presents an acute danger to our community. As seen in the statutory mandatory minimums for Fentanyl distribution, Congress recognized the danger of this particular drug, which is responsible for a national opioid crisis that has resulted in increase in fatalities.[2] The statistics regarding the dangers of Fentanyl are staggering:

- In Maryland in 2020, there were 803 firearms deaths (CDC); but 2,342 fentanyl related deaths (Maryland Department of Health Annual Report).

- In DC in 2019, there were 141 firearms deaths (Johns Hopkins); but 257 Fentanyl related deaths (DC Office of the Chief Medical Examiner).

- 95% of opioid overdoses in DC in 2021 involved fentanyl (DC Office of the Chief Medical Examiner).

---

2     *See, e.g.*, Fentanyl Deaths Climbing, DEA Washington Continues the Fight *available at* https://www.dea.gov/stories/2022/2022-02/2022-02-16/fentanyl-deaths-climbing-dea-washington-continues-fight

- The number of fentanyl related deaths in DC is clearly on the rise. There were 257 in 2019; 382 in 2020; and 402 in 2021 (DC Office of the Chief Medical Examiner).

- 2 milligrams of Fentanyl can be a lethal dose (https://www.dea.gov/resources/facts-about-fentanyl).

Fentanyl continues to have a devastating impact on the local and national community. According to the Washington Post, there were "more than 107,000 drug overdose deaths in 2021 alone, there are many Greenvilles — places where the powerful opioid fentanyl and other drugs have produced clusters of overdose deaths, or picked off victims one at a time." *See Drugs Killed 8 Friends, One by One, in a Tragedy Seen Across the Country*, December 2, 2022 (*available at* https://www.washingtonpost.com/health/interactive/2022/drug-overdose-deaths-fentanyl-greenville-nc/).

As seen in his prior arrests and his continued drug activity since his conviction in 2020, Jones has the ready ability to acquire both firearms and drugs that present an ongoing danger to our community.

## CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the Court detain Keith Jones pending trial on his charge.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


*/s/ Justin F. Song*
JUSTIN F. SONG
Assistant United States Attorney
N.Y. Attorney No. 5626379
601 D Street NW
Washington, D.C. 20530
(202) 227-9019
Justin.Song@usdoj.gov